## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 07-80179-Cr-Hurley/Vitunac (s)

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

RON WILLIAMS,

        Defendant.

_____/

FILED by _____ D.C.

OCT 2 1 2008

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on general Order of Reference from United States District Judge Daniel T. K. Hurley for disposition of all pending pretrial criminal motions. Pending before the Court is Defendant Ron William's Motion to Strike Language From Superseding Indictment (DE 77), filed September 19, 2008. The Government filed its Response on September 28, 2008 (DE 80). This matter is ripe for review.

## BACKGROUND

The Defendant is charged by Superseding Indictment ("Indictment")(DE 36) with the following: count 1 - mail fraud, in violation of 18 U.S.C. §§ 1341 and 1349; counts 2 and 3 - wire fraud, in violation of 18 U.S.C. § § 1343 and 1349; count 4 - wire fraud, in violation of 18 U.S.C. § 1343; and count 5 - money laundering, in violation of 18 U.S.C. § 1957. If convicted the Defendant faces the following: counts 1 through 4 - up to 20 years imprisonment and a $250,000 fine as to each count; and count 5 - up to ten years imprisonment and a $250,000 fine.

## DEFENDANT'S WRITTEN MOTION

The Defendant moves the Court for an order striking the words "stock promoter," "corrupt," and "sham" from the instant Indictment on the grounds that they are surplusage, inflammatory and meant to prejudice the jury. Defendant submits that the phrase "stock promoter" in the Indictment mischaracterizes his role in the alleged investment transaction. Defendant argues he is "an investment banker" hired by a private corporation to act as a financial advisor. Defendant maintains that the use of the word "corrupt" to describe the character of a fund manager adds prejudicial language to the indictment. Defendant argues that the Government's use of the word "corrupt" is to inflame the pleadings and prejudice the Defendant before the jury. Last, Defendant submits that the use of the word "sham" in the Indictment to describe the consulting agreement at issue is inflammatory and prejudicial. Defendant argues that whether the consulting agreement was legitimate is a matter for the jury to conclude.

## GOVERNMENT'S RESPONSE

The Government maintains that the Court should deny Defendant's Motion to strike portions of the indictment because Superseding Indictment does not contain surplusage.

The Government submits that the Defendant lied to investors to induce them to invest money in shares of stock in a company called International Systems and Electronics ("ICE"). According to the Government, the Indictment alleges that Defendant's purpose in the scheme to defraud was to unjustly enrich himself. The Government alleges that to accomplish that purpose Defendant (1) falsely represented to investors that they would receive freely tradeable ISE stock after ISE went public, and (2) that the initial public offering of ISE stock was imminent. The Government contends that investors deposited

2

over $500,000 into bank accounts controlled by the Defendant. The Government further contends that the Defendant did not use the investor funds in connection with taking ISE public. Instead, the Defendant used the funds for "other matters . . . including personal use."

The Government also contends that during the course of the fraudulent scheme the Defendant was introduced to a hedge fund manager who was actually an undercover agent ("UCA") with the Federal Bureau of Investigation ("FBI"). The UCA was willing to invest with the Defendant if "he received an undisclosed 20% kickback." The Government submits that the Indictment alleges that the Defendant attempted to induce the UCA to invest $1,000,000 of hedge fund money for freely tradeable shares of ISE stock. In recorded conversations, the UCA informs Defendant that because he has a fiduciary duty to the hedge fund investors his kickback of 20% must not be disclosed. According to the Government, to conceal the kickback fee, the Defendant and the UCA entered into a "sham consulting agreement." The consulting agreement was between the Defendant and a company purportedly controlled by the UCA's brother. The Defendant was informed by the UCA that his brother was a "blue collar worker" "not in the business of providing consulting services." After receiving an initial payment of $50,000 from the UCA, the Defendant wire transferred $10,000.00 representing the 20% undisclosed payment, to the company purportedly controlled by the UCA's brother.

The Government argues that the phrase "stock promoter" is an accurate representation of the Defendant's activities in this action. The Government maintains that Defendant was engaged in securing financing for ICE through the sale of freely tradeable shares of ISE stocks. The Government submits that Defendant's relevant conduct is consistent with the type of undertakings typically defined as a stock promoter, which

3

according to the Government is someone "who secures financing for, and helps organize an undertaking, such as a business." The Government also argues that the use of the word "corrupt" in the instant indictment is consistent with the definition for corruption which is "bribery or similar dishonest dealings." The Government submits that the Defendant entered into a dishonest agreement to bribe the UCA. The Government argues that its allegation that the UCA posed as "a corrupt hedge fund manager" is accurate and relevant to establish the Defendant's intent to defraud. Last, the Government argues that the word "sham" in the Indictment is used consistently with its meaning which is "an imitation that is meant to deceive."

## THE SUPERSEDING INDICTMENT

Here, the Defendant moves the Court to strike the words "stock promoter" "corrupt" and "sham" from the Indictment. First, the Defendant argues that the word "stock promoter" should be stricken from paragraph 1 of the Indictment which states:

> "Defendant RON WILLIAMS was a stock promoter who operated a company called Victoria Financial Consultants, LLC ("Victoria Financial").

(DE 36:1).

Second, the Defendant argues that the word "corrupt" should be stricken from paragraph 3 of the Indictment which states:

> "An agent of the Federal Bureau of Investigation ("FBI"), acting in an undercover capacity, posed as a corrupt manager of a fictitious unregulated hedge fund located in West Palm Beach, Florida named Fillmore Capital, LLC ("Fillmore Capital"). The undercover FBI agent ("UCA") offered to have Fillmore Capital purchase securities of a given company to the exclusion of other securities in exchange for an undisclosed payment.

(DE 36:1,2).

Third, the Defendant argues that the word "sham" should be stricken from paragraph

4

9 of the Indictment, which states:

> "On September 19, 2007, the defendant executed the sham consulting agreement and the subscription agreement for the purchase of $1,000,000 of ISE stock by Fillmore Capital. The defendant caused the UCA to wire transfer $50,000 to the defendant's bank account in Texas for the first of three transactions which would total the purchase of $1,000,000 of ISE stock by the UCA."

(DE 36:3).

## DISCUSSION

The issue before the Court is whether Defendant has met the exacting standard

necessary to strike the words "stock promoter" "corrupt" and "sham" as surplusage in the

Superseding Indictment.

Federal Rule of Criminal Procedure 7(d) provides that "[u]pon defendant's motion,

the court may strike surplusage from the indictment or information. It is important to note

that Rule 7(d) is strictly construed against striking surplusage:

> A motion to strike surplusage from an indictment should not be granted "unless it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial . . . [T]his is a most 'exacting standard.'" United States v. Huppert, 917 F.2d 507, 511 (11th Cir. 1990) (quoting 1 Charles A. Wright, Federal Practice and Procedure § 127 at 424-29 (1982)). Therefore, it is proper to reserve ruling on a motion to strike surplusage until the trial court has heard evidence that will establish the relevance of the allegedly surplus language . . .

United States v. Awan, 966 F.2d 1415, 1426 (11th Cir. 1992). As such, the Court should

only order words stricken from the indictment as surplusage where it is clear that the

allegations are not relevant to the charge and are inflammatory and prejudicial. Id. See also

U.S. v. Bullock, 451 F.2d 884, 888 (5th Cir. 1971). Additionally, even when prejudice can

be shown, the Court should not strike the information contained in the indictment if it is

relevant to the charged offense. U.S. v. Scarpa, 913 F.2d 993, 1013 (2nd Cir. 1990).

In the present case, Defendant has not met the exacting burden necessary to strike

language from an Indictment for the following reasons. First, the phase "stock promoter" in paragraph 1 of the Superseding Indictment is used in a manner consistent with its defined terms. Black's Law Dictionary defines stock as "[t]he capital or principal fund raised by a corporation through subscribers' contributions or sale of shares." A promoter is defined as one who promotes. http://www.merriam-webster.com/dictionary. Promotes is from the Latin promotus, meaning to move forward. Id. Accordingly, the literal definition of a stock promoter is one whose conduct moves a company forward by providing capital through the sale of shares in the company. The phrase "stock promoter" as defined is innocuous. Defendant fails to demonstrate with any specificity how he will be prejudiced by the use of the phrase "stock promoter" to describe his role in the transactions alleged in the Indictment. Here, the phrase "stock promoter" is relevant because the gist of the allegations charged in the Indictment concern Defendant's actions allegedly to defraud by moving ICE forward through the sale of shares in the company. Thus, the phrase stock promoter is descriptive of the conduct alleged in the Indictment and relevant to the offense charged. Accordingly, the Court finds that the phrase "stock promoter" in the Second Superseding Indictment is relevant to the charge and not inflammatory and prejudicial. Awan, 966 F.2d at 1426.

Second, the Court finds the use of the word "corrupt" in the Indictment to describe the UCA's role in this case relevant to the offenses charged. The word corrupt is used in the Second Superseding Indictment to describe the hedge fund manager who agreed to purchase stock in ICE from the Defendant, for the hedge fund, in return for an undisclosed kickback. Black's Law Dictionary defines the word corrupt as "having an unlawful or depraved motive; esp., influenced by bribery." The relevant conduct of the UCA alleged in the Indictment is that he posed as a hedge fund manager who had an "unlawful or

6

depraved motive" which was in fact, his willingness to accept a bribe from the Defendant in exchange for his purchase on behalf of the hedge fund of $1,000,000 of ICE shares. Here, the allegation that the UCA posed as a "corrupt" fund manager is relevant to Defendant's alleged conduct to defraud.  This language does not blur the elements necessary for conviction or confuse the issues. Instead, the language describes the alleged purpose of the UCA's role.  Further, it conveys information that the Government hopes to properly prove at trial. United States v. Climatemp, Inc. 482 F. Supp. 376 (N.D. Ill. 1979). Such language, if legally relevant, cannot be considered surplusage no matter how prejudicial it may be. Id. Accordingly, the Court finds the word "corrupt" relevant to the offenses charged in the Second Superseding Indictment.

Third, the Court finds the use of the word "sham" to describe the alleged consulting agreement between the UCA and the Defendant relevant. The Government's argument that the word "sham" is descriptive of the alleged nature of the consulting agreement, and, in fact, the gist of the case is very compelling. In an analogous case, the government used the word "sham" in an indictment to describe a tax scheme designed to defraud by using falsified documentation for services, which services were never rendered, for the purpose of disguising cash payoffs. United States v. Sciandra, 529 F. Supp. 320, 322 (D.C. N.Y. 1982). In Sciandra, the court denied defendant's motion to strike the word "sham" finding instead the government's argument compelling that the description of the transaction as a "sham" was "not only relevant, but in fact the gist of the case." Id. Here, the use of the word "sham" to describe the consulting agreement is relevant to the charge and should not be stricken as surplusage under the "exacting standard" dictated by the Eleventh Circuit in Awan, 966 F.2d at 1426, which instructs the Court to deny a motion to strike surplusage from an indictment "unless it is clear that the allegations are not relevant to the charge and

are inflammatory and prejudicial." (citation omitted).

All admissible evidence is prejudicial. The real question is whether the use of the words "sham," "stock promoter" and "corrupt" are unfairly prejudicial in the particular indictment. This Court finds they are not.

## RECOMMENDATION

For the reasons stated above, this Court recommends to the District Court that the Defendant's Motion to Strike Language From Superseding Indictment (DE 77) be DENIED.

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable United States District Judge Daniel T. K. Hurley, within ten (10) days after being served with a copy. See 28 U.S.C. § 636(b)(1)(C). Failure to file timely objections may limit the scope of appellate review of factual findings contained herein. See United States v. Warren, 687 F.2d 347, 348 (11th Cir. 1982) cert. denied, 460 U.S. 1087 (1983).

DONE and SUBMITTED in Chambers at West Palm Beach in the Southern District of Florida, this 21 day of October 2008.

ANN E. VITUNAC
UNITED STATES MAGISTRATE JUDGE

Copies to:
United States District Judge Daniel T. K. Hurley
All counsel of record